## HARPER v. LOCKHART.

1. EVIDENCE.

Ordinarily, proof of an implied contract is not admissible when there is an allegation and proof of an express one. Yet when both parties agree as to an amount to be paid for services, but dispute with reference to the time which that sum was to pay for, proof of the reasonable value of the services rendered may be given as an aid to the court in determining what construction to put upon the negotiations of the parties and the true interpretation of their oral contract.

2. AGISTER'S LIEN—FORFEITURE—STATUTORY CONSTRUCTION.

It is provided by General Statutes, sec. 1035 (Mills' Ann. Stats., sec. 1514), that whenever the keeper of a public ranch uses or allows to be used, without the consent of the owner, any animal left with him to be ranched or fed, he shall forfeit to the owner all ranch or stable fees which may be due, and an additional sum for each day such animal shall have been used. Under this provision, which is applicable only to public agisters, a keeper who has used some of the animals intrusted to him may nevertheless retain a lien upon those not used.

3. SAME—PRACTICE—OFFER OF PROOF.

A plaintiff in replevin, to recover animals from an agister, who desires to rely on the above-mentioned provision of the statute, is, under the circumstances of this case, bound to state the number of animals used, and to offer his proof for the definite purpose of reducing the amount of the lien which the defendant would be entitled to insist on.

*Error to the County Court of Mesa County.*

Mr. JOHN H. CROXTON and Mr. HENRY W. ROSS, for plaintiff in error.

No appearance for defendant in error.

BISSELL, J., delivered the opinion of the court.

Robert Harper was the owner of thirty-eight jacks and jennies, which he placed with the defendant in error, Lockhart, to be cared for during the winter of 1893. The stock

were to be kept until the ensuing June, pastured and fed at a certain price. The sum to be paid is the only question in dispute. The ownership of the stock is conceded; that they were cared for from the time they were received by Lockhart until June is admitted, and the payments which the owner made on the bill thus contracted are undisputed. At the expiration of the time for which the stock was placed with Lockhart, Harper demanded possession, having made a tender of the sum which he admitted to be the balance due. Lockhart refused to surrender and asserted a lien for the unpaid balance of the price which he claimed was to be paid for the service. Harper brought this suit in replevin to recover possession and damages for the detention. The suit was begun before a justice without written pleadings, taken on appeal to the county court, where judgment was rendered adversely to the owner of the property in the sum of $21.00, which was the extent of the rancher's lien on the property, and one cent for his damages. To reverse this judgment this writ of error is prosecuted.

We are unable to discover any substantial question presented other than one which springs from the difference in the story told by the two parties respecting the transaction or contract. As we view it, the only real controversy is over the facts. These have been found adversely to Harper, who brought the replevin suit, and since there is evidence in the record on both sides of the question, and the court below was entitled to find either way thereon, we are concluded by its judgment, which we accept as final and determinative of the matter. *Ullman v. McCormic*, 12 Colo. 553.

With this premise we will state the dispute. When Harper came to Grand Junction to place his stock for the winter, he fell in with Lockhart and they commenced negotiations. One of the principal things which the parties discussed was the terms on which the stock should be taken. Whatever contract was made between Harper and Lockhart rested in parol. A dollar and a half was the sum specified for the care of the stock, and the question was whether the agreement

was $1.50 per month per head, or $1.50 per head for the entire season.  There is no conflict in the evidence in regard to the fact that that sum was named, but there is a dispute about the period which the price should cover.  Harper, to maintain his contention, produced sundry and divers receipts, which took on somewhat the form of contracts, signed by Jesse Lockhart, a son of the defendant.  To support his contention that he had a right to rely on these contracts and that the defendant was bound thereby, he testified to a conversation with Lockhart, wherein, as he claimed, Lockhart admitted that Jesse, his son, would act for him and whatever he did would be satisfactory, and he would carry out any arrangement the son might make.  This was denied by Lockhart, and the making of the contract in the form in which it appeared in the paper was likewise denied by the son, who denied his agency.  This difference in the evidence of course calls on the court to determine whether or not Jesse Lockhart was the agent of his father, authorized to act, and whether he made the contract as it was presented, and so made it that the written agreements should be taken to embody the conclusion of the parties.  The court evidently determined no such authority existed, and that the agreements were not contracts which would bind Lockhart, and his testimony respecting the original convention was entirely admissible.  We find enough in the case to support this conclusion, with which we are inclined to agree.  Jesse Lockhart was a boy of twelve years of age, and, like all other sons of men who are running ranches, was aiding his father and doing work about the place and caring for stock which his father might receive.  It is quite impossible to conclude the father intended to be bound by whatever arrangement an infant of tender years might make with a third party, when he himself had substantially agreed upon the terms before the stock was driven to the ranch and turned over to the son.  The son denied that he made any such arrangement as Harper testified to, and averred that he did not read the papers at all, but supposed he was signing a receipt for the stock.  Having

reached this conclusion, one of the principal points argued before us, that a party is not permitted to dispute a written agreement or introduce any evidence per contra, is wholly disposed of. Even though the principle be conceded, as it must be, it is totally inapplicable to the case made by the witnesses. The case then turns on what occurred between the parties, and the determination of what the agreement actually was. The court below found that it was $1.50 per month, and that the owner of the stock owed the ranchman $21.00, and that he was not entitled to replevy the stock until he paid it. There is enough evidence in the record to support the judgment. Another question is made respecting the proof which Lockhart produced as to the value of those services, and the general charge in that section. The owner insists that, having set up an express contract, recovery cannot be had on an implied one. Ordinarily, proof of an implied contract is not admissible when there is allegation and proof of an express one. This doctrine was recognized in the *Rockwell Stock & Land Company v. Castroni*, 6 Colo. App. 528. Conceding this proposition does not necessarily make it error for the court to admit the testimony. In the first place, there was a grave difference between the parties as to what the conversation or what the contract was. In one sense it was not definite in its terms, and in another it was. Both parties agree as to the amount, $1.50, and the dispute was with reference to the time which that sum would pay for. Neither party was able to produce exact testimony on that proposition, and it became a question for the court to decide which contention was right. Under these circumstances, it infringes no rule of evidence with which we are familiar to permit proof to be given of the reasonable value of the services rendered, that thereby the court may be aided in determining what construction to put on the negotiation of the parties and the true interpretation of their oral contract. This has been admitted in many cases. If it was inadmissible, it was harmless, because the case was tried to the court, and, there being evidence which would support its

finding without this, the case could not be reversed because of this ruling.

During the progress of the trial the defendant produced a witness named Clark, by whom the plaintiff attempted to prove he had seen Lockhart use some of the jacks during the winter. This evidence was offered on the basis of a statutory provision (General Statutes, 1883, section 1035) which generally enacts that whoever keeps a public ranch and uses or allows to be used, without the consent of the owner, any stock left with him to be ranched or fed, shall forfeit to the owner all ranch or stable fees which may be due, and an additional sum, to be collected in an action of debt, for each day such animal shall be used. The theory on which the testimony was offered was, that since the title to the stock was conceded to be in Harper, and the only right which Lockhart had to detain it was because of his agister's lien for the unpaid service, if the plaintiff in the suit was able to show he had no lien at all, because he had forfeited it under the statute, he must necessarily recover. This is the only troublesome question in the case, and if the plaintiff had gone further in his offer we should be inclined to reverse the case because of the rejection of this proof. It must manifestly be true if the owner brings replevin for stock which is detained by another, whose only right of detention grows out of a lien, that lien either never existing or having been destroyed or satisfied, the plaintiff must succeed. Harper offered to prove that Lockhart had used three, four, or more of the jacks without the consent of the plaintiff. This would not have defeated the whole lien claim, and the plaintiff would only succeed in his suit as to the stock used and not as to the balance, if a lien existed. According to the terms of the statute, the agister only forfeits his lien on the animal used, and Lockhart would still have had a right to detain the balance of the stock for the unpaid price. Under these circumstances the plaintiff was bound to definitely state how many jacks were used, and he was also bound to offer his proof for the definite purpose of reducing the amount of the

lien which Lockhart was entitled to insist on. This was not the offer, but it was an offer to prove the use of the jacks for the purpose of proving damages. In addition to this difficulty, the plaintiff did not go far enough with his offer, and make proof or offer to make proof that the defendant came within the designation of the statute. There is a wide difference between the private individual who is running a ranch and takes a particular lot of stock to ranch for a season, and one who runs a stable or a ranch and takes stock for the general public and whose place is open to whosoever may come for the purpose of ranching stock or stabling it. The statute evidently aims at people who keep public places. Its specific language is "a public ranch or stable." This language can only be taken as intended by the legislature to apply to those who keep stables or ranches for general use, and take, the contract being otherwise acceptable, whatever stock may be offered and by whomsoever it may be offered, so long as the parties are unobjectionable and willing to pay. Manifestly, it does not include all ranchmen nor all stable keepers. Under these circumstances, we are not able to reverse the case because of this possible error which the court permitted, since the plaintiff did not go far enough in his offer to show that he could make out a case, which would bring the Lockhart lien within the terms of that statute. An offer to make some proof which is admissible, even though it be refused, will not be enough to reverse a case, unless the offer include all that may be necessary to make out a cause of action or a defense, as the case may be. If the court had received this testimony, it would have amounted to nothing without the other proof which was not offered. Harper, then, is in no condition to insist that this ruling was erroneous.

The discussion disposes of every substantial question which is presented by the record, and since we find no errors inhering therein, we must affirm the judgment, which is accordingly done.

*Affirmed.*

WILSON, J., not sitting.